**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:19-cv-00386-MOC**
**(3:16-cr-00220-MOC-DSC-1)**

| | | |
|---|---|---|
| **MARION QUINTON BREWSTER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

    **THIS MATTER** is before the Court on initial screening of Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [Doc. No. 1].

## I.    BACKGROUND

    On January 9, 2017, Pro Se Petitioner Marion Quinton Brewster ("Petitioner") pleaded guilty without a written plea agreement to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). [Criminal Case No. 3:16-cr-00220-MOC-DSC ("CR"), Doc. 18: Acceptance and Entry of Guilty Plea]. At the plea hearing, a Factual Basis was accepted and made part of the record, with certain objections made on Petitioner's behalf. [See CR Doc. 38 at 10: Plea Hearing Transcript]. The Factual Basis stated, in pertinent part, as follows:

    On May 19, 2016, at approximately 8:45 p.m., Charlotte Mecklenburg Police Department Officers (CMPD) responded to an armed robbery call at a self-service car wash in Charlotte. [CR Doc. 17 at ¶ 1: Factual Basis]. The victim of the alleged robbery spoke with the officers and told them he had been washing his truck when a black male with a dark cap and wearing a bandana

over his face approached the victim and pointed a silver revolver at him. The gunman ordered the victim to empty his pockets and throw everything on the ground. The victim complied, tossing his wallet and some loose change on the pavement. The gunman asked where the victims keys were. The victim replied that they were in the truck. The gunman then told the victim to "Run, Motherfucker!" The victim ran across the street and called the police from a local business. [Id.].

The victim told the responding officers that before the robbery the victim had noticed a low-riding green Ford Expedition driving suspiciously around the car wash. [Id. at ¶ 2]. As the victim ran away, he saw the Expedition parked in the parking lot of the carwash. By the time the officers arrived on the scene, the Expedition was gone.[1] [Id.].

Just a few minutes later, other CMPD officers located a green Expedition fitting the victim's description. [Id. at ¶ 3]. The officers pulled the vehicle over and, as the officers approached the vehicle on foot, the front seat passenger, later identified as the Petitioner, jumped out and ran. The officers who chased the Petitioner saw Petitioner drop a chrome revolver, which was immediately recovered and determined to be a Smith & Wesson "Airweight" Model 642, .38 caliber handgun. This gun was reported stolen in Columbia, South Carolina. [Id.]. The Petitioner was apprehended a short distance later. The driver of the Expedition was detained behind the wheel and removed from the vehicle. He was wearing a ski mask pulled down around his neck. The victim's wallet was in the front seat area of the Expedition. [Id.].

The victim was brought to the scene where the Petitioner and the driver were being detained in CMPD vehicles. The victim positively identified the Petitioner and the Expedition but could not identify the driver. The victim also identified his wallet and its contents. [Id. at ¶ 5].

---

[1] The Factual Basis states that "defendant reserves the right to object to the facts in paragraphs one (1) and two (2), specifically regarding [the victim's] accounting of an alleged armed robbery." [CR Doc. 17, fn. 1, 2].

The Petitioner has been previously convicted of multiple robbery and carjacking offenses in South Carolina. [Id. at ¶ 6]. The handgun that Petitioner possessed was not manufactured in North Carolina. [Id. at ¶ 7].

On August 18, 2016, Petitioner was charged in a Bill of Indictment with one charge of "knowingly and unlawfully" possessing a firearm and ammunition in interstate commerce "having been previously convicted of one or more crimes punishable by imprisonment for a term exceeding one year," in violation of 18 U.S.C. § 922(g)(1). [CR Doc. 3: Indictment]. A United States Magistrate Judge accepted Petitioner's guilty plea after conducting a thorough plea colloquy, during which Petitioner was represented by counsel. [See CR Doc. 38 at 1-15]. Under oath, Petitioner told the Court that he received a copy of the indictment and discussed it with his attorney. [CR Doc. 18 at ¶ 8: Entry and Acceptance of Guilty Plea]. The Court read the full charge aloud to the Petitioner during the hearing. [CR Doc. 38 at 4]. The Court advised that the maximum penalty for the offense under normal circumstances would be 10 years' imprisonment. [CR Doc. 38 at 5]. The Court then instructed that the maximum penalty changes when the defendant is an armed career criminal. In those cases, the Court advised that the maximum penalty for the crime to which Petitioner was pleading guilty was "not less than 15 years nor more than life imprisonment." [CR Doc. 38 at 5]. Petitioner then told the Court that he fully understood the charge against him, including the maximum and minimum penalties he faced. [CR Doc. 18 at ¶ 9; CR Doc. 38 at 5]. The Petitioner further attested that he had spoken with his attorney regarding how the U.S. Sentencing Guidelines might apply to his case and that, in some circumstances, Petitioner may receive a sentence higher or lower than that called for in the Guidelines. [CR Doc. 18 at ¶ 13, 14]. The Petitioner also told the Court that he understood that if his sentence is more severe than Petitioner expected, the Petitioner will still be bound by his plea and would have no

right to withdraw it. [CR Doc. 18 at ¶ 17]. The Petitioner stated, under oath, that he is in fact guilty of the count in the Bill of Indictment to which he was pleading guilty. [CR Doc. 18 at ¶ 24; CR Doc. 38 at 9].

The Petitioner also told the Court that he was aware that a Factual Basis had been filed in his case and that he had read it, understood it, and agreed with it. [CR Doc. 18 at ¶ 26-7; CR Doc. 38 at 10]. Petitioner stated that no one had threatened, intimidated, or forced him to enter his plea of guilty. [CR Doc. 18 at ¶ 28]. He told the Court that he was "satisfied with the services of [his] lawyer in this case." [CR Doc. 18 at ¶ 31].

Several months later at the Petitioner's sentencing hearing, the Court affirmed the Magistrate Judge's findings and acceptance of the Petitioner's guilty plea after reviewing it with the Petitioner. [CR Doc. 39 at 3-4]. The Court entered a verdict and judgment of guilty. [Doc. 39 at 4]. Before the sentencing hearing, a probation officer prepared a Presentence Investigation Report (PSR). At the hearing, Petitioner's counsel raised an unresolved objection related to the application of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), to Petitioner's previous convictions. [CR Doc. 39 at 5]. Specifically, the Plaintiff had four convictions from two dates in November 2000, two from acts committed on November 7, 2000, and two from acts committed on November 17, 2000. The Court and the parties agreed the convictions on November 17, 2000, for armed robbery and carjacking, were committed as a single criminal episode for purposes of the ACCA. [CR Doc. 39 at 5-6]. There was dispute, however, on whether the two convictions for acts committed on November 7, 2000, were one continuous criminal episode or two separate occasions. [See CR Doc. 39 at 5-21]. Ultimately, the Court overruled the Petitioner's objections and concluded, for purposes of the ACCA, the crimes committed on November 7, 2000, were to be considered separately and sentenced the Petitioner as an armed career criminal. [CR

Doc. 39 at 23-24]. The Petitioner's Total Offense Level was 31 and his Criminal History Category was VI, which yielded a guidelines range of 188 months to 235 months in prison. [CR Doc. 31 at 1]. The Court, however, varied downward from this range, sentencing the Petitioner to 180 months' imprisonment and a term of supervised release of five years. [CR Doc. 30: Judgment]. In so doing, the Court noted that the "ACCA predicate convictions were nearly 17 years prior to the sentencing date and occurred within one month of each other." [CR Doc. 31 at 3: Statement of Reasons].

The Petitioner appealed to the Fourth Circuit Court of Appeals, challenging the District Court's conclusion that Petitioner's crimes of conviction on November 7, 2000, were committed on different occasions. [CR Doc. 32; see CR Doc. 41 at 2]. The Fourth Circuit upheld the District Court's conclusion that the offenses occurred on separate occasions and affirmed the Petitioner's criminal judgment. [CR Doc. 41 at 6].

## II.    STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States

v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b). After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

Petitioner raises eight claims in his motion to vacate. Specifically, he argues that: (1) he received ineffective assistance of counsel because (a) his attorney failed to adequately investigate to gather all evidence regarding the offense prior to trial, (b) his attorney coerced Petitioner into pleading guilty to the offense without having all the facts, (c) his attorney failed to object to the Government's introduction of the "factual basis agreement" at sentencing, (d) his attorney failed to use Petitioner's documents to show the predicate South Carolina convictions all counted as one continuous criminal episode, and (e) his attorney failed to explain the difference between a sentencing guideline and the ACCA enhancement prior to pleading guilty; (2) Petitioner's South Carolina carjacking offenses no longer apply as violent felonies for purposes of ACCA and Petitioner is entitled to be re-sentenced under 18 U.S.C. § 924(e); (3) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated where his sentence was enhanced based on prior convictions and sentences (double jeopardy); (4) the Court erred and abused its discretion in sentencing Petitioner to a 180-month sentence before inquiring whether Petitioner (a) knew that he was being sentenced subject to the ACCA enhancement and (b) did, in fact, plead guilty to the predicate South Carolina offenses knowingly and intelligently; (5) his guilty plea was not knowingly and voluntarily made in violation of his right to due process; (6) the state court documents used to impose an ACCA sentence were "not sufficient nor detailed enough without more to support prior offenses on separate occasions"; (7) the Government engaged "in a form of

prosecutorial misconduct which violated [Petitioner's] right to due process and prejudiced his right to a fair sentencing"; and (8) Petitioner is actually innocent of violating § 922(g) under Rehaif v. United States, 139 S. Ct. 2191 (2019). [Doc. 1 at 19-20, 45].

The Court groups and addresses Petitioner's claims as follows: (1) claims of ineffective assistance of counsel; (2) error by the Court at sentencing; (3) legal claims; (4) claim of prosecutorial misconduct; (5) claim that Petitioner's guilty plea was not knowing and voluntary; and (6) claim of actual innocence.

**A.      Petitioner's Claims of Ineffective Assistance of Counsel**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Further, a petitioner must show that proceeding to trial would have been objectively reasonable. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error.  Royal v. Taylor, 188 F.3d 239, 249 (4th Ci1r. 1999) (quoting Strickland, 466 U.S. at 694)).  If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong."  United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### 1.  Investigation and Guilty Plea.

Petitioner contends his attorney was ineffective in several ways leading up to Petitioner's guilty plea.  Specifically, Petitioner asserts that his attorney was ineffective because his attorney failed to adequately investigate to gather all evidence regarding the offense prior to trial, his attorney coerced Petitioner into pleading guilty to the offense without having all the facts, and his attorney failed to explain the difference between a sentencing guideline and the ACCA enhancement prior to pleading guilty

First, Petitioner asserts that his attorney failed to adequately investigate and gather evidence.  Specifically, Petitioner states:

> Had counsel investigated, he would have found that the firearm was subjected to forensic analysis, finger printing and DNA analysis.  And the results showed that the firearm had no finger prints [*sic*] of the defendant nor DNA.
>
> The alleged victim did not report that the person who robbed him had on gloves, nor did the Government reference to any being used or found as evidence connected with the crime.

[Doc. 1 at 28].  The Petitioner argues that he "pled guilty without having all of the facts in evidence" and that "[h]e did not plead guilty because he believed he was guilty, he did so based upon his attorneys [*sic*] advice and what evidence he was advised that the Government had."  [Doc. 1 at 28].  The Petitioner, however, does not allege that he requested that his attorney seek such

"forensic analysis" of the firearm at any time before he pleaded guilty, but only asked his attorney if such evidence existed. [See Doc. 1 at 29-30]. In any event, Petitioner's assertion that counsel failed to adequately investigate his case concerns his pre=plea conduct and is waived by Petitioner's voluntary guilty plea. See Field v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Circ. 1992). Further, the Factual Basis in this case, which the Petitioner accepted with an objection that does not apply here, established that the Petitioner did, in fact, possess the firearm at issue. [CR Doc 17 at ¶ 3]. Additionally, before the Court accepted the Petitioner's guilty plea, the Petitioner testified that he was satisfied with the services of his attorney. [CR Doc. 18 at ¶ 31]. As such, Petitioner has failed to show deficient performance by his attorney on this issue and cannot demonstrate prejudice, in any event.

Next, Petitioner contends that his attorney coerced Petitioner into pleading guilty. In support of this claim, Petitioner states that "trial counsel consistently advised [Petitioner] that if he went to trial, he would be found guilty, because the police would say that they saw him drop the firearm and that no amount of evidence would dispute that." [Doc. 1 at 29]. Petitioner's contention that his attorney coerced Petitioner to plead guilty is belied by Petitioner's sworn representations during the plea proceedings that he was not threatened, intimidated, or forced to plead guilty; that he was in fact guilty of the offense; and that he was satisfied with his attorney's performance. [CR Doc. 18 at ¶¶ 24, 28, 31]. Petitioner has not alleged or shown extraordinary circumstances to overcome the sworn testimony that he gave during the plea hearing. See Lemaster, 403 F.3d at 221-22. Accordingly, his claim of ineffective assistance on this issue is without merit.

Finally, Petitioners argues that his attorney failed to explain the difference between a sentencing guideline and the ACCA enhancement prior to pleading guilty. This contention is again belied by Petitioner's testimony at the plea hearing. At the hearing, the Court advised the Petitioner

that the maximum penalty for Petitioner's offense under normal circumstances would be 10 years' imprisonment.  [CR Doc. 38 at 5].  The Court then instructed that the maximum penalty changes when the defendant is an armed career criminal.  In those cases, the Court advised that the maximum penalty for the crime to which Petitioner was pleading guilty was "not less than 15 years nor more than life imprisonment."  [Id.].  Petitioner then told the Court that he fully understood the charge against him, including the maximum and minimum penalties he faced.  [CR Doc. 18 at ¶ 9; CR Doc. 38 at 5].  As with his claim of coercion, Petitioner has not alleged or shown extraordinary circumstances to overcome the sworn testimony that he gave during the plea hearing. See Lemaster, 403 F.3d at 221-22.

Moreover, Petitioner's own motion to vacate forecloses a showing a prejudice.  Namely, in support of his argument that his attorney coerced him into pleading guilty, Petitioner states, that "he only ran [from the police] because he knew that the police would accuse him of some type of crime because of his past, once they ran a check on him, and found that he was a convicted felon. And furthermore, he did not want to plead guilty because he could face an enhanced sentence." [Doc. 1 at 29].  As such, even if Petitioner's attorney did not adequately explain the difference between the guidelines and an ACCA enhancement, the Petitioner admits that he knew that he was subject to an enhancement.

Additionally, although Petitioner alleges that "had counsel provided him with a clearer picture of what he faced if he pleaded guilty, [Petitioner] would have went to trial," he does not show that proceeding to trial would have been objectively reasonable.  See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).  Thus, this claim also fails because he has not adequately alleged or shown prejudice.

## 2.     Sentencing Hearing.

To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence.  See Royal v. Trombone, 188 F.3d 239, 249 (4th Cir. 1999).

Petitioner contends that his attorney was ineffective at sentencing.  Specifically, Petitioner contends that his attorney failed to object to the Government's introduction of the "factual basis agreement" at sentencing and his attorney failed to use Petitioner's documents to show Petitioner's predicate South Carolina convictions all counted as one continuous criminal episode.  [Doc. 1 at 19].

Petitioner's argument of ineffectiveness relative to the introduction of the Factual Basis is without merit.  Petitioner has not shown deficient performance because he has not shown a basis on which counsel could have objected to the introduction of the Factual Basis.  The District Court judge who conducted the Petitioner's sentencing hearing specifically discussed the Factual Basis with the Petitioner.  [CR Doc. 38 at 10].  The Petitioner testified that he was aware that the factual basis had been made part of the record in the Petitioner's criminal case, that Petitioner had spoken with his attorney about it, and that Petitioner read the document, understood it, and agreed with it. [Id.].  Further, Petitioner has not shown that he was prejudiced by any failure of counsel to object at sentencing, particularly where the document had already been made part of the record, or how he was prejudiced by its introduction at sentencing.  As such, Petitioner failed to show ineffective assistance on this ground.

Petitioner's argument regarding his attorney's failure to use Petitioner's documents to show that Petitioner's predicate South Carolina convictions all counted as one continuous criminal episode is equally without merit.  It appears the documents that Petitioner contends his attorney

should have used at sentencing directly follow Petitioner's motion. [See Doc. 1 at 47-65]. They consist of printouts of select South Carolina law and documents from Petitioner's criminal cases in South Carolina. The record shows that many, if not all, of these same documents evidencing Petitioner's South Carolina convictions were introduced into the record and considered by the Court at Petitioner's sentencing hearing. [CR Doc. 39 at 17]. Further, Petitioner's attorney thoroughly and extensively argued at Petitioner's sentencing that Petitioner's two South Carolina convictions on November 7, 2000, for armed robbery and carjacking should be considered two parts of a single criminal episode for purposes of sentencing under the ACCA.[2] [See CR Doc. 39 at 5-21]. Further, Petitioner challenged this issue on appeal to Fourth Circuit. The Fourth Circuit upheld the District Court's conclusion that the offenses occurred on separate occasions and affirmed Petitioner's criminal judgment. [Doc. 41 at 6]. As such, Petitioner has shown neither deficient performance nor prejudice with respect to Petitioner's attorney's alleged failure to use Petitioner's documents to show Petitioner's predicate South Carolina convictions all counted as one continuous criminal episode. See Strickland, 466 U.S. at 687-88, 694.

Accordingly, Petitioner has shown neither deficient performance nor prejudice relative to any of the grounds he asserts in support of his claim for ineffective assistance of counsel. His claims of ineffective assistance of counsel are, therefore, denied. See Strickland, 466 U.S. at 687-88, 694.

---

[2] The parties and the Court agreed, without argument, that the Petitioner's convictions for armed robbery and carjacking on November 17, 2000, constituted one criminal episode for ACCA purposes. [See CR Doc. 39 at 6].

**B.** **Petitioner's Claim that the Court Erred at Sentencing.**

    **1.** **Petitioner's claim that the Court erred and abused its discretion in sentencing Petitioner without inquiring whether Petitioner knew he was being sentenced subject to the ACCA enhancement.**

Petitioner claims that the Court, upon resolving whether the Petitioner's South Carolina convictions from November 7, 2000, would be considered separate criminal episodes for ACCA purposes, should have asked Petitioner questions to "insure [*sic*] that [Petitioner] entered his plea knowingly and intelligently with regards to the introduction of other facts that would effect the sentence for the charged offense." [Doc. 1 at 39]. "Had the Court dun [*sic*] so, it would have found that [Petitioner's] plea was not as knowingly and intelligently made as stated in the colloquy." [Id.]. This argument is without merit. At the time of Petitioner's sentencing, the Court had already accepted and entered Petitioner's guilty plea, which was established to have been knowing and voluntary at the Petitioner's plea hearing. [See CR Doc. 18]. Further, as outlined above with respect to Plaintiff's ineffective assistance claim, the Petitioner's allegations are belied by his plea hearing testimony. Petitioner then told the Court that he fully understood the charge against him, including the maximum and minimum penalties he faced, including the fact that the mandatory minimum penalty for an armed career criminal defendant facing that charge was 15 years. [CR Doc. 18 at ¶ 9; CR Doc. 38 at 5]. The Court had no duty after the Petitioner's plea had been properly accepted to make further inquiry of Petitioner once the Court decided that the ACCA would apply to enhance Petitioner's sentence. The Court, therefore, denies Petitioner's motion on this ground.

**2. Petitioner's claim that the Court erred and abused its discretion in sentencing Petitioner without inquiring whether the Petitioner did, in fact, plead guilty to the predicate South Carolina offenses "knowingly and intelligently."**

In support of this contention, Petitioner states that had the Court made proper inquiry, it "would have found that, [Petitioner] would have admitted to the Richland County [South Carolina] convictions, but not to entering a 'counseled' plea to the Lexington County offense." [Doc. 1 at 40]. These allegations are vague, conclusory, and without merit. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations), cert. denied, 135 S. Ct. 47 (2014). Documentation of Petitioner's guilty pleas to his South Carolina offenses were presented to and considered by the Court at Petitioner's sentencing hearing. [See CR Doc. 39 at 17]. Plaintiff fails to present any ground for the Court to look behind the Petitioner's pleas to the South Carolina offenses and make its own determination regarding whether one of those pleas was knowingly made for purposes of serving as an ACCA predicate. The Court, therefore, denies Petitioner's motion to vacate based on this ground.

**C. Petitioner's Legal Claims.**

**1. Petitioner's claim that South Carolina carjacking is no longer a violent felony.**

Petitioner contends that his predicate South Carolina conviction for carjacking, which was relied upon to enhance his sentence under the ACCA, is no longer considered a violent crime and he is entitled to be re-sentenced without the enhancement under the ACCA. [Doc. 1 at 36].

The ACCA provides significantly higher penalties for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), when the felon has previously been convicted of three or more "predicate offenses." United States v. Mungro, 754 F.3d 267, 268 (4th Cir. 2014). These

predicate offenses include violent felonies and serious drug offenses. Id. (citing 18 U.S.C. § 924(e)(1). Violations of § 922(g) are normally punishable by no more than ten years' imprisonment. Id. (citing 18 U.S.C. § 924(a)(2)). Under the ACCA, this sentence increases to a mandatory minimum of fifteen years' imprisonment. Id. (citing 18 U.S.C. § 924(e)(1)).

Petitioner's status as an armed career criminal is based, in part, on a prior conviction for carjacking in South Carolina. [CR Doc. 27 at ¶ 25]. Petitioner contends that carjacking is no longer a crime of violence and, therefore, cannot serve as an ACCA. Petitioner's argument is foreclosed by McLamore v. United States, No. 3:16-cv-01858-MBS, 2019 WL 3407150 (D. S.C. July 26, 2019). In McLamore, the United States District Court for the District of South Carolina squarely held that "South Carolina carjacking is categorically a crime of violence." 2019 WL 3407150, at *2 (denying petitioner's Section 2255 motion and rejecting petitioner's argument that he was no longer a career offender under the ACCA because "his attempted carjacking conviction is no longer a predicate offense under the ACCA").

Therefore, Petitioner's prior convictions for carjacking in South Carolina remain predicate offenses under the ACCA. As such, the Petitioner's sentence shall not be disturbed on these grounds.

### 2. Petitioner's claim of constitutional violation based on double jeopardy.

Petitioner argues that the use of his prior South Carolina convictions for which he had already served his sentences as predicates for the ACCA enhancement "is a form of double jeopardy that is unconstitutional." [Doc. 1 at 38]. This argument is without merit. The Double Jeopardy Clause does not prohibit the consideration of a defendant's prior convictions for purposes of enhancing his sentence for a subsequent crime. United States v. Richardson, 724 F.App'x 193, 195 (4th Cir. 2018) ("[E]nhancement of a sentence does not constitute new jeopardy or additional

punishment for [defendant's] earlier offenses…. In any event, there is not double jeopardy violation when two separate sovereigns—the United States and the state of North Carolina—prosecute an individual for the same offense.") (internal quotations and citations omitted). Petitioner's claim for relief based on a constitutional violation is, therefore, denied.

### 3. Petitioner's claim that he is actually innocent under <u>Rehaif v. U.S.</u>

Petitioner claims that he is actually innocent of violating § 922(g) and cites <u>Rehaif v. United States</u>, 139 S. Ct. 2191 (2019), in support of this proposition. [Doc. 1 at 46]. Petitioner argues:

> The movant never consented to having knowledge that he knew he possessed a firearm with knowing that he belonged to the relevant category of persons barred from possessing a firearm. No where in the plea agreement did the government require that he admit such. When in fact he did not know. The firearm in question was not taken off of his person but found after he was accused of having committed the offense. In accordance with the above, the Government must prove that "he" knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. In movants case both were not established nor shown.

[Doc. 1 at 45 (spellings errors corrected)].

In <u>Rehaif</u>, the Supreme Court held that, in a prosecution under § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. 139 S. Ct. at 2195. The petitioner in <u>Rehaif</u> was an alien who entered the country on a nonimmigrant student visa to attend university. He received poor grades and the university dismissed him. The university told the petitioner that his "immigration status" would be terminated unless he transferred to a different university or left the country. <u>Id.</u> at 2194. After the Government learned of the petitioner's visit to a firing range, where he shot two firearms, the petitioner was prosecuted for possessing firearms as an alien unlawfully in the United States in violation of § 922(g) and §

924(a)(2). The case went to trial. The judge instructed the jury, over petitioner's objection, that the "United States is not required to prove" that the petitioner "knew he was illegally or unlawfully in the United States." Id. at 2194. The jury found the petitioner guilty and he was sentenced to 18 months' imprisonment. Id. At issue before the Supreme Court was whether the Government must prove that a defendant knows of his status as a person barred from possessing a firearm, which in that case was the petitioner's status as an illegal alien. Id. at 2195. The Supreme Court held that, in a prosecution under § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. Id.

Rehaif does not apply to the Petitioner's motion. The requirement of proof by the Government that a defendant knew he belonged to the relevant category of persons barred from possessing a firearm was found in the context of a jury trial. In the instant case, the Petitioner was charged with "knowingly and unlawfully" possessing a firearm and ammunition in and affecting commerce 'having been previously convicted of one or more crimes punishable by imprisonment for a term exceeding one year." [CR Doc. 3 at 1]. He pleaded guilty to this charge "straight up," without a plea agreement, and confirmed both at his plea hearing and his sentencing hearing that he was, in fact, guilty of this charge. [CR Doc. 18 at ¶ 24; CR Doc. 39 at 3]. "A knowing, voluntary, and intelligent guilty plea to an offense conclusively establishes the elements of the offense and the material facts necessary to support the conviction." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Petitioner's representations to the Court during the plea proceeding establish that his plea was knowingly and voluntarily made. As such, the Petitioner is not actually innocent under Rehaif. The Court, therefore, denies Petitioner's motion on this ground.

**D.    Petitioner's Claim that His Guilty Plea Was Not Knowing and Voluntary.**

The Petitioner claims that his guilty plea was not knowingly and voluntarily made because "he only understood that he was pleading guilty to Possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He did not knowingly and voluntarily much less intelligently plead guilty to the use of his predicate South Carolina robbery and carjacking offenses from 17 years in the past to be used against him, nor did he plead guilty with the intelligent knowledge that the ACCA would be used to enhance his sentence substantially." [Doc. 1 at 41]. This argument is also without merit. Where, as here, a defendant has pleaded guilty, the defendant's admissions during the plea colloquy are sufficient to satisfy the requirement that any fact that increases a criminal penalty beyond the prescribed statutory maximum must be charged in the indictment and proved to the jury beyond a reasonable doubt. United State v. Cohen, 888 F.3d 667, 684 (4th Cir. 2018).

Further, the Court has already addressed Petitioner's contentions regarding his knowledge of whether the ACCA could be used to enhance his sentence before the Petitioner pleaded guilty and does not need to revisit that issue here.

**E.    Petitioner's Claim of Prosecutorial Misconduct.**

Petitioner claims "the Government engaged in a form of prosecutorial misconduct which violated his right to due process and prejudiced his right to fair sentencing." [Doc. 1 at 44]. In support of this contention, Petitioner states that the Government "failed to read the fine print" of a document the Government introduced to show that Petitioner had been convicted in Lexington County, South Carolina, for the armed robbery committed on November 7, 2000, to establish a separate conviction, where such "fine print" stated "Backdate sentence to 3/4/02!" [Id.]. Petitioner argues that March 4, 2002, was Petitioner's "original sentencing date, by the same judge

(Manning), who sentenced him in Richland County." [Id.]. Plaintiff baldly argues that "the Exhibit was highly prejudicial, and entered in to [*sic*] the record in violation of Brewster's right to due process." [Id.].

This claim fails for several reasons. First, Petitioner's allegations are wholly conclusory. Plaintiff fails to show how this alleged conduct constituted prosecutorial misconduct. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations), cert. denied, 135 S. Ct. 47 (2014). Further, Plaintiff fails equally in supporting his allegation of prejudice or how the entry of this document into the record violated Plaintiff's due process rights.

Next, Petitioner's allegations in support of his claim of prosecutorial misconduct are wholly unsupported by the record. The document about which Petitioner complains is from his file in his Lexington County conviction for armed robbery. [Doc. 1 at 65]. This document was discussed at length at Petitioner's sentencing, including the "fine print" to which Petitioner refers. Petitioner's allegations on this issue are misleading, at best, and certainly do not support a claim of prosecutorial misconduct. The Court will, therefore, deny Petitioner's motion on these grounds.

In sum, for the reasons stated herein, Petitioner cannot show deficient performance and prejudice; therefore, his ineffective assistance claims are denied. Furthermore, Petitioner's legal claims are without merit, as are Plaintiff's claims of prosecutorial misconduct and error by the District Court at sentencing.

## IV.     CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1.     Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc.1] is **DENIED** and **DISMISSED**.

2.     **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: October 8, 2019

Max O. Cogburn Jr
United States District Judge